IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ROCHELLE L. SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00379-O-BP |
| | § | |
| GENERAL MOTORS LLC, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Motion for Judgment on the Pleadings, Brief in Support, and Appendix filed by Defendant General Motors, LLC ("GM"); Response, Brief in Support, and Appendix filed by Plaintiff Rochelle L. Smith ("Smith"); GM's Reply; and Smith's Sur-reply. ECF Nos. 82-84, 86-88, 89, and 90, respectively. This case was referred to the undersigned for pretrial management under Special Order No. 3. ECF No. 17. After reviewing the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT** GM's Motion and **DISMISS** Smith's claims as explained below.

**I.     BACKGROUND**

Smith filed this suit against GM in the Dallas Division of the Court on March 22, 2023. ECF No. 1. On March 28, 2023, the case was transferred to this division. ECF No. 9. Smith filed her Amended Complaint, which is the live pleading in this case, on May 22, 2023. ECF No. 25. In the Amended Complaint, Smith sues GM under 42 U.S.C. § 12117(a), the Americans with Disabilities Act ("ADA"), and the Texas Commission on Human Rights Act ("TCHRA"). *Id.* at 1-2. On September 14, 2023, the Court dismissed Smith's TCHRA claims. ECF Nos. 70, 74.

The following description of the facts comes from the Amended Complaint. GM hired

Smith as a temporary forklift driver on February 24, 2020. ECF No. 25 at 3. On August 29, 2020, while attempting to avoid an "automated see-grid," Smith ran her forklift into a pole. *Id*. The crash caused her to suffer neck and shoulder stiffness as well as a concussion. *Id*. On September 2, 2020, Smith was cleared to return to work, restricted to sedentary work only. *Id*. at 4. Smith alleges that on her return, GM repeatedly assigned her to jobs that violated her restrictions. *Id.* at 6.

On September 17, 2020, GM assigned her to the "trim shop" in a role that required her to operate heavy equipment and lift objects. *Id.* This aggravated her injuries, so she complained to her supervisor. *Id.* The next day, GM reassigned her to the "stripping department," where she worked until September 30, 2020. *Id*. This job required her to stand "for more than the restricted hours of standing based on her restrictions." *Id.* In October 2020, GM reassigned her to the trim department in an inventory role. *Id.* at 7. There, she had to stand for long periods of time, reach, pull, and walk. *Id.* GM gave her the same assignment in February 2021. *Id.*

In March 2021, GM assigned Smith to the trim shop in a job that it claimed would accommodate her injuries. *Id.* at 7-8. But this role still required her to walk, reach, bend, and ride along with a co-worker to deliver parts, all of which she claims fell outside of her work restrictions. *Id.* at 8. In a further effort to accommodate Smith, GM reassigned her to janitorial work in the meeting and break rooms. *Id.* This job required her to pick up trash and clean the walls, lockers, cabinets, and tables. *Id.* Smith complained to her supervisor that these roles violated her work restrictions. *Id.*

Smith complained about these assignments to her supervisors and to her union. *Id.* at 9. GM then informed Smith that, if she was unwilling or unable to perform the janitorial work, it would have to place her in the No Job Available With Restrictions program, which would allow her to return to work when her restrictions were reduced. *Id*. at 9. Smith asserts that this constituted

retaliation. *Id.* She also alleges that GM did not permit her to attend the "ADAPT" program, which "is a program that helps" employees with medical restrictions "transition and find meaningful work." *Id.*

Roughly a year later, in March 2022, Smith had not returned to work, so GM declined to promote her from a temporary employee to permanent employee and terminated her employment. *Id.* at 10. When Smith asked GM why it terminated her, she was told that she had not received the promotion and had been terminated because she had been on worker's compensation for over a year and had refused to return to work. *Id.* GM also informed Smith that it would rehire her if she could get medically cleared to come back to work. *Id.* On December 19, 2022, Smith filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that GM had failed to accommodate her injuries and ultimately wrongfully discharged her. *Id.* at 11. She received a right to sue letter from the EEOC on December 22, 2022. *Id.*

## II.   LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is subject to the same legal standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citation omitted). "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Id.* (cleaned up) (quoting *Hughes v. The Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)). To survive a motion for judgment on the pleadings, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal punctuation & citation omitted).

A court should grant a Rule 12(c) motion when "the plaintiff would not be entitled to relief

3

under any set of facts that [s]he could prove consistent with the complaint." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). While courts liberally construe the pleadings of a *pro se* party, "even a liberally-construed *pro se* . . . complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Tex. at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice[.]" *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

### III. ANALYSIS

In its Motion, GM seeks dismissal of Smith's ADA claims because: (1) most of the alleged acts of discrimination fell outside the 300-day limitations period; (2) Smith did not exhaust her administrative remedies; and (3) she did not sufficiently plead a wrongful discharge claim. ECF No. 83 at 2-11. In response, Smith claims that her untimely claims survive under the continued violation doctrine and that she sufficiently pleaded a wrongful discharge claim. ECF No. 86 at 5.

#### A. The 300-day statute of limitations bars most of Smith's claims.

A plaintiff must exhaust her administrative remedies before filing a claim under the ADA in federal court. *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (citation omitted). To do so, a plaintiff must file a claim with the EEOC "within 180 days of the unlawful act or, within 300 days if the plaintiff has first filed a complaint with a state or local agency." *Ikossi–Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 549 (5th Cir. 2009); *EEOC v. WC & M Enterprises*, Inc., 496 F.3d 393, 398 (5th Cir. 2007) (citing 42 U.S.C. § 2000e–5(e)(1)).

Here, Smith filed her discrimination charge ("Charge") with the EEOC and the Texas Workforce Commission ("TWC") on December 19, 2022. ECF No. 25 at 11. Because she filed with the TWC, the 300-day statute of limitations attached, meaning that any act contained within

the Amended Complaint must have occurred on or after February 22, 2022. But almost all of the acts of discrimination Smith alleged occurred long before February 22, 2022, and are thus time-barred. *See generally* ECF No. 25.

      Smith's argument that her claims survive under the continued violation doctrine is unavailing. ECF No. 86 at 5. "The continuing violation theory provides that where the last act alleged is part of an ongoing pattern of discrimination and occurs within the filing period, allegations concerning earlier acts are not time-barred." *McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 866 (5th Cir. 1993) (internal quotation marks and citation omitted). But this doctrine "does not apply to discrete acts, even if those acts are 'serial'" in nature. *Rushing v. Yazoo Cnty. Ex rel. Bd. of Supervisors of Yazoo Cnty.*, 861 F. App'x 544, 553 (5th Cir. 2001) (cleaned up) (quoting *Gen. Land Office v. U.S. Dep't of the Interior*, 947 F.3d 309, 319 (5th Cir. 2020)); *see also Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x. 387, 391 (5th Cir. 2005); *Tudor v. Mayorkas*, Case No. 3:23-cv-0344-D, 2023 WL 7549192, at *3 (N.D. Tex. Nov. 14, 2023) ("[T]he continuing violation doctrine does not apply to intentional discrimination claims based on discrete acts.") (citation omitted). Discrete acts include easily identifiable actions "such as termination, failure to promote, denial of transfer, or refusal to hire[.]" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *see also Henson*, 128 F. App'x. at 391 (holding that defendant's failure to accommodate plaintiff's disability, allow him to continue participating in the employer's EAP program, and provide him with appropriate work considering his limitations, were all discrete acts). All of Smith's alleged acts of discrimination—failure to accommodate, failure to promote, and wrongful discharge—are discrete acts that do not qualify as continuing violations. Consequently, the continued violation doctrine does not save any of the alleged discriminatory acts that fall outside of the 300-day limitations period.

Smith's Amended Complaint only alleges three acts that are not time-barred: (1) GM's failure to enroll Smith in the ADAPT program; (2) GM's refusal to promote her after her second work anniversary; and (3) the alleged wrongful discharge. *Id.* Smith argues that all or part of these discriminatory acts occurred in March 2022. Therefore, other than these three acts from March 2022, Judge O'Connor should **DISMISS** all of Smith's ADA claims as time-barred.

### B. Smith did not exhaust her administrative remedies on her failure to promote and failure to enroll claims.

Administrative exhaustion occurs when the plaintiff presents her claims in an EEOC charge and receives a right to sue letter. *See Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021). To determine whether a plaintiff has properly presented a claim, courts consider whether she formally asserted it in the relevant EEOC charge or the claim could "reasonably be expected to grow out of the charge[.]" *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006)). "[T]he proper question is whether the charge has stated sufficient facts to trigger an EEOC investigation . . . and to put an employer on notice of the existence and nature of the charges against him." *Madathil v. Accenture LLP*, No. 4:18-CV-511-ALM-CAN, 2019 WL 2913308, at *8 (E.D. Tex. May 29, 2019), *rec. adopted*, No. 4:18-CV-511, 2019 WL 2905037 (E.D. Tex. July 5, 2019) (quoting *Simmons-Myers v. Caesars Entm't Corp.*, 515 F. App'x 269, 272-73 (5th Cir. 2013) (per curiam)). When a court dismisses a claim for failure to exhaust administrative remedies, the dismissal is without prejudice, as the claimant has the right to return to court after exhausting applicable administrative remedies, if she can do so. *Taylor v. United States Treasury Dep't*, 127 F.3d 470, 478 (5th Cir. 1997).

> Smith's Charge states, in its entirety:
>
> > HARM: I began my employment in March 2020, as a Forklift Operator. In August 2020, I was injured at work. I returned to work in September 2020 and the employer did not honor my restrictions. I was sent home. On or about March 8, 2022, I was informed that my employment terminated, and I was no longer in the system. I was discriminated against because of my injury. REASON: No reason given. I believe I was discriminated against as described above, because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended (ADA).

ECF No. 84 at 12.

Nothing in the Charge references Smith's allegations that GM did not permit her to attend the ADAPT program or that it denied her a promotion after her second work anniversary. Liberally construed, the Charge would not have caused GM to reasonably expect either of these alleged acts to grow out of the Charge. Tellingly, EEOC records that Smith filed do not indicate that the EEOC investigated either alleged act. *Id*. at 6-40. Additionally, in her response, Smith did not argue that she raised these claims in her Charge or that they were a logical outgrowth of the Charge. *See generally* ECF No. 87. Accordingly, the undersigned concludes that Smith did not exhaust her administrative remedies as to her claims for GM's failure to promote her and failure to enroll her in the ADAPT program, and Judge O'Connor should **DISMISS** these claims **without prejudice** to her right to refile once she has exhausted her administrative remedies.

### C.   Smith did not plead a proper wrongful discharge claim.

Smith has not pleaded sufficient facts to support her claim for wrongful discharge. To establish a *prima facie* case of wrongful discharge under the ADA, a plaintiff must prove: (1) that she has a disability under the ADA; (2) "that [s]he was qualified for the job;" and (3) that the employer terminated her because of her disability. *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017) (citations omitted). GM argues that Smith did not adequately

state her wrongful discharge claim because she does not allege that she was disabled under the ADA, she was qualified for the job, and she was terminated because of her disability. ECF No. 83 at 12-15. In response, Smith argues that: (1) "[her] restrictions and limitations meet the ADA requirements to show [she] was disabled" and she "has adequately alleged that her restrictions and limitations impact[ed her] major life activities because she was not allowed to work her current forklift job"; (2) "[she] was qualified for the job because she passed a medical exam that allowed her to operate heavy operating equipment . . . before the August 29, 2020 incident;" and (3) she has pleaded that GM fired her because of her disability since she was told "you have about a week to clear medical to get your job back." ECF No. 87 at 16, 19-20 (internal quotation marks omitted).

1. <u>Smith did not state facts to show that she was qualified for the job</u>.

A plaintiff can establish that she is "qualified" by showing that either (1) she could "perform the essential functions of the job in spite of her disability," or "(2) that a reasonable accommodation of her disability would have enabled her to perform the essential functions of the job." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (cleaned up) (quoting *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir.1996)). "Time off, whether paid or unpaid, can be a reasonable accommodation, but an employer is not required to provide a disabled employee with indefinite leave." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016). Furthermore, reassignment to a different job may be a reasonable accommodation, but "[t]he plaintiff bears the burden of proving that an available position exists that [she] was qualified for and could, with reasonable accommodations, perform." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007) (citing *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997) ("For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant.")).

GM argues that Smith has not alleged that she was qualified for her job as a forklift driver because she admits that operating heavy equipment violated her work restrictions. ECF No. 83 at 10-11. Additionally, it asserts that Smith did not state facts to show that there were any other jobs or tasks that she could have performed with or without reasonable accommodation. *Id.* In response, Smith claims that she was qualified for her job as a forklift driver because "she passed a medical exam that allowed her to operate heavy operating equipment[,] [] held a . . . license to drive a forklift," and that she was—after the forklift incident—"qualified for sedentary" work. ECF No. 87 at 19.

As a preliminary matter, the Court need not consider the allegations that Smith made in her response because she did not raise them in her original or amended complaint, and it is improper for her to attempt to amend her pleadings in a response brief. *See Mun. Employees' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 436 (5th Cir. 2019) (citing *Lohr v. Gilman*, 248 F. Supp. 3d 796, 810 (N.D. Tex. 2017) ("a plaintiff may not amend [a] complaint in [a] response to a motion to dismiss")).

Even if Smith had properly raised this point, her arguments are not persuasive. First, just because she was qualified to be a forklift driver when GM hired her does not mean that she still was qualified after her forklift crash. Smith even admits that her work restrictions, which did not allow her to drive a forklift, rendered her unqualified because driving the forklift was an essential function of her job. ECF No. 25 at 3, 6.

Second, Smith's assertion that she was qualified for sedentary work is insufficient. Smith must offer facts to show that a specific job was available for which she was qualified. *Jenkins*, 487 F.3d at 315. Smith's pleadings do not identify any specific job that was available to her and for which she was qualified. *See* ECF Nos. 25, 87. Moreover, GM placed her in no less than six

different alternative jobs, none of which Smith was either able or willing to perform, indicating that there were no jobs for which she was qualified. ECF No. 25 at 3-11. The undersigned therefore finds that Smith has not sufficiently pleaded facts that would show that she was qualified for the job, and Judge O'Connor should **DISMISS** Smith's wrongful discharge claim.

### 2. Smith did not adequately plead disability under the ADA.

Even if Smith had pleaded facts showing that she was qualified, she did not present facts demonstrating that she was disabled. The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). To "be substantially limited means to be unable to perform a major life activity that the average person in the general population can perform, or to be significantly restricted in the ability to perform it." *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 614 (5th Cir. 2009) (citing 29 C.F.R. § 1630.2(j)). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Thus, for Smith to adequately allege that she was disabled under the ADA, she had to plead facts sufficient to give rise to an inference that she had a physical or mental impairment which "substantially limit[ed] one or more 'major life activities.'" *See Luedecke v. Tenet Healthcare Corp.*, 2015 WL 58733, at *5 (N.D. Tex. Jan. 5, 2015) (quoting *Hale v. King*, 642 F.3d 492, 500-01 (5th Cir. 2011)).

Other than Smith's conclusory statements that she was a "disabled employee," restricted to "sedentary work," the Amended Complaint is devoid of any facts giving rise to an inference that she was disabled under the ADA. *See generally* ECF No. 25. Smith alleges, for the first time

in her Response to GM's Motion, that her injuries substantially limited her major life activities. ECF No. 87 at 16. This allegation is insufficient to plead a disability as it is improper for the Court to rely on a response to a motion to assist the pleadings. *See Pier 1*, 935 F.3d at 436 (citing *Lohr*, 248 F. Supp. 3d at 810).

Even if Smith had made this allegation earlier than in her response, it is insufficient to establish that she was disabled. Smith's medical restriction on lifting does not automatically qualify her as disabled. *See, e.g.*, *Tyler v. La-Z-Boy Corp.*, 506 F. App'x 265, 268 (5th Cir. 2013) ("lifting restrictions of twenty-four pounds from floor to waist and twenty pounds from waist to overhead do not qualify as a disability under the ADA"); *Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir. 1996) (restriction of lifting no more than five to ten pounds did not "substantially limit" the major life activity of lifting). To show substantial limitation on working, a plaintiff must allege that she is "unable to work in a broad class of jobs." *Sutton v. United Air Lines*, 527 U.S. 471, 483 (1999). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Ray*, 85 F.3d at 229. Smith only alleges that she cannot perform her role as a forklift driver. *See* ECF No. 25. She alleges no facts demonstrating that she is unable to work in other jobs, and she acknowledges that she can perform sedentary work. *Id.*

Accordingly, the undersigned finds that Smith has not sufficiently pleaded facts to show that she was disabled under the ADA. Because she has not pleaded facts to show that she was disabled, she likewise cannot show that GM terminated her employment because of a disability. Accordingly, Judge O'Connor should **DISMISS** her wrongful discharge claim.

## IV.   CONCLUSION

The undersigned **RECOMMENDS** that Judge O'Connor **GRANT** GM's Motion for Judgment on the Pleadings (ECF No. 82), **DISMISS** Smith's claims that GM refused to promote

her and failed to enroll her in the ADAPT program **without prejudice** to her right to refile them once she has exhausted her administrative remedies, **DISMISS** Smith's remaining claims, and **DENY** the pending discovery-related motions (ECF Nos. 92-93, 96, 101, 107-109) as **MOOT**.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on July 3, 2024.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE